IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

TUWUN DERRELL FLEMING,                    )
                                          )
          Plaintiff,                      )
                                          )
VS.                                       )          No. 13-2838-JDT-dkv
                                          )
TIPTON COUNTY, ET AL.,                    )
                                          )
          Defendants.                     )

ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

On October 24, 2013, Plaintiff, Tuwun Derrell Fleming, a pretrial detainee at the Tipton County Jail in Covington, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion seeking leave to proceed *in forma pauperis*. (Docket Entries 1 & 2.) After Plaintiff filed the required documents (D.E. 4), the Court issued an order on December 4, 2013, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a)-(b) (D.E. 5). The Clerk shall record the Defendants as Tipton County;[1] Assistant District Attorney General Walt Freeman; Atoka Police Officers Randal Robbins and Chris Ellwood; the Town of Atoka, Tennessee; and Tipton County Clerk Mike Forbes.

---

[1] The Court construes the allegations against the "Tipton County Sheriff Office Department" as an attempt to assert a claim against Tipton County.

The factual allegations of the complaint are as follows:

Walt Freeman went to Chris Stanphill and his lawyer and told him to say he bought drugs from me just to put me away fasly [sic]. Randal Robbins is filing false charges against me wrongful imprisonment[.] Chris Ellwood is doing the same thing putting fake drug charges on me false imprisonment[.]

Mike Forbess is the [sic] who use to be a police who gave his police issued gun to some boy many years ago and that's why he blam [sic] me and I was a kid I have proof[.] Please help[.]

(Compl., D.E. 1 at 2.)

The prayer for relief states as follows:

I just want to have a fair court hearing out of these people hands in be treated fairly so I will have a fair and just hearing and if I'm not the person stop them from putting false charges on other people so that this will stop[.] It not write [sic]. I only got wind because I don't do what they are saying. Change of venue, maybe to 30th Judicial District[.]

And I've filed a motion to suppress the evidence Sept 23, 2013[.] A motion to dismiss a void indictment Sept 17, 2013[.] A habeas corpus as well and still know [sic] word back Oct 16, 2013[.]

Mr. Freeman told me they concerning them in Sept. But still no word back. And they get what should be done to them for putting fake charges on me and violating my rights[.]

(Id. at 3.)

In a supplement to his complaint, Plaintiff claims that Defendants are deliberately "putting these charges on [him] falsly [sic]." (D.E. 1-1 at 1.) Plaintiff's brother, Stacy Lee Fleming, was tried on some criminal charge in Covington that ended in a mistrial. Plaintiff and some other people were sitting outside the courtroom with Defendant Robbins, who was trying to record his conversation. Plaintiff asked Robbins in a joking manner whether he was

trying to give Plaintiff a fake charge, and he said no.  Five years later, Robbins "is the man saying [Plaintiff] sold someone drugs."  (Id.)

In 2010, Defendants Robbins and Ellwood visited Plaintiff's probation officer about a car Plaintiff had purchased from Mary Poole.  Mary Poole is the cousin of the Atoka Chief of Police.  (Id.)  Defendant Ellwood also allegedly visited Corrections Alternative in Memphis, Tennessee.  At that time, Plaintiff had not been indicted.  (Id.)

Plaintiff further alleges that "[t]he Tipton County Sheriff which is 'ponco'[2] is in on what's going on[.]"  (Id.)  Plaintiff is accused of trying to obtain medicine at a pharmacy on April 12, 2013, that he had never visited.  The pharmacy is owned by a relative of the sheriff's wife.  Someone at the pharmacy says she recognized Plaintiff from a twelve-year-old photograph in the Most Wanted paper.  (Id.)  Plaintiff's mother and wife have experienced delays in obtaining the surveillance video from the store.  (Id. at 2.)

In 2008, Christopher Stanphill told Plaintiff that Defendant Freeman had said that if he was willing to testify that he purchased drugs from Plaintiff his charge of selling prescription medicine to a police officer would be dropped.  (Id. at 2.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

---

[2] According to the Tipton County website, "Pancho" is the nickname of Sheriff J.T. Chumley.

(2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009), and in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007), are applied. Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; *see also* Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally." Hill, 630 F.3d at 470 (citing Neitzke v. Williams, 490 U.S. 319, 325 (1989)). "Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." Id. (citing Neitzke, 490 U.S. at 328-29).

4

Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

Id. at 471 (citations and internal quotation marks omitted).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." Williams, 631 F.3d at 383 (quoting Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); *see also* Brown v. Matauszak, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf.* Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, No. 09-5480, 2011 WL 1827441, at *4 (6th Cir. May 12, 2011) ("[W]e decline to

affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue."); *cert. denied*, 132 S. Ct. 461 (2011).

To state a claim under 42 U.S.C. § 1983,[3] a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

The complaint contains no factual allegations against Defendant Forbes. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570.

The complaint does not assert valid claims against Tipton County and the Town of Atoka. When a § 1983 claim is made against a municipality or county, the court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. Collins v.

---

[3] Section 1983 provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

City of Harker Heights, Tex., 503 U.S. 115, 120 (1992).  The second issue is dispositive of Plaintiff's claims against Tipton County and the Town of Atoka.

A local government "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't. of Soc. Serv., 436 U.S. 658, 691 (1978) (emphasis in original); *see also* Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994); Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th Cir. 1994).  A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.  Monell, 436 U.S. at 691-92; Deaton v. Montgomery Co., Ohio, 989 F.2d 885, 889 (6th Cir. 1993).  To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." Alkire v. Irving, 330 F.3d 802, 815 (6th Cir. 2003) (citing Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1993)).  "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." Alkire, 330 F.3d at 815 (quoting Monell, 436 U.S. at 690-91).  The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." Searcy, 38 F.3d at 286 (quoting Polk Co. v. Dodson, 454 U.S. at 326 (citation omitted)).  "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited

7

to action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479-80 (1986)).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *see* Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g.*, Fowler v. Campbell, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); Oliver v. City of Memphis, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); *cf.* Raub v. Corr. Med. Servs., Inc., No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); Chidester v. City of Memphis, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). The complaint does not allege that Plaintiff suffered any injury arising from an unconstitutional policy or custom of Tipton County or the Town of Atoka.

Portions of the complaint appear to be time barred. The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007); *see also* Wilson v. Garcia, 471 U.S. 261, 275-76 (1985). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tennessee Code Annotated § 28-3-104(a). Roberson v. Tenn., 399 F.3d 792, 794 (6th Cir. 2005); Hughes v. Vanderbilt Univ., 215 F.3d 543, 547 (6th Cir. 2000); Berndt v. Tenn., 796 F.2d 879, 883 (6th Cir. 1986). Plaintiff's complaint was signed

8

on October 22, 2013 (D.E. 1 at 3), so every claim arising prior to October 22, 2012, is untimely.  Although it is not possible to ascertain from the complaint when Plaintiff was arrested on his pending charge, the alleged plea offer to Stanphill occurred in 2008 and Defendants Robbins and Ellwood visited Plaintiff's probation officer in 2010.  Plaintiff's claims arising from these incidents are time barred.

The complaint does not state a valid claim for false arrest against Defendants Robbins and Ellwood.  A Fourth Amendment claim for false arrest requires an arrest without probable cause.  *See, e.g.*, Parsons v. City of Pontiac, 533 F.3d 492, 500 (6th Cir. 2008); Crockett v. Cumberland Coll., 316 F.3d 571, 580 (6th Cir. 2003) ("Today it is well established that an arrest without probable cause violates the Fourth Amendment.").  Probable cause exists where "'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." Crockett, 316 F.3d at 580 (quoting Mich. v. DeFillippo, 443 U.S. 31, 37 (1979)); *see also* Wolfe v. Perry, 412 F.3d 707, 717 (6th Cir. 2005) ("probable cause necessary to justify an arrest is defined as 'whether at that moment [of the arrest] the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense'" (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)) (alterations in original)); Gardenhire v. Schubert, 205 F.3d 303, 315 (6th Cir. 2000).  The vague and conclusory allegations of Plaintiff's complaint do not clearly identify the charges on which Plaintiff was

9

arrested and do not set forth any facts indicating that, at the time Plaintiff was arrested, these

Defendants lacked probable cause to believe he had committed a crime.

The complaint also does not allege a valid malicious prosecution clam against

Defendants Freeman, Robbins, and Ellwood.  The requirements for a malicious prosecution

claim under § 1983 are as follows:

> The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration."  Barnes v. Wright, 449 F.3d 709, 715-16 (6th Cir. 2006) (internal quotation marks omitted).  The "tort of malicious prosecution" is "entirely distinct" from that of false arrest, as the malicious-prosecution tort "remedies detention accompanied not by absence of legal process, but by *wrongful institution* of legal process."  Wallace v. Kato, 549 U.S. 384, 390, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) (internal quotation marks omitted). . . .

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following:  First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute."  Fox v. DeSoto, 489 F.3d 227, 237 (6th Cir. 2007); *see also* McKinley v. City of Mansfield, 404 F.3d 418, 444 (6th Cir. 2005); Darrah v. City of Oak Park, 255 F.3d 301, 312 (6th Cir. 2001); Skousen v. Brighton High Sch., 305 F.3d 520, 529 (6th Cir. 2002).  Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution, Fox, 489 F.3d at 237; Voyticky, 412 F.3d at 675.  Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure.  Johnson v. Knorr, 477 F.3d 75, 81 (3d Cir. 2007); *see* Gregory v. City of Louisville, 444 F.3d 725, 748-50 (6th Cir. 2006) (discussing the scope of "Fourth Amendment protections . . . beyond an initial seizure," including "continued detention without probable cause"); *cf.* Heck v. Humphrey, 512 U.S. 477, 484, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) ("[U]nlike the related cause of action for false arrest or imprisonment, [an action for malicious prosecution] permits damages

10

> for confinement imposed pursuant to legal process."). Fourth, the criminal
> proceeding must have been resolved in the plaintiff's favor. Heck, 512 U.S.
> at 484, 114 S. Ct. 2364 ("One element that must be alleged and proved in a
> malicious prosecution action is termination of the prior criminal proceeding in
> favor of the accused.").

Sykes v. Anderson, 625 F. 3d 294, 308-09 (6th Cir. 2010) (additional citations and footnote

omitted); *see also* Marcilis v. Twp. of Redford, 693 F.3d 589, 604 (6th Cir. 2012) ("In order

to prove malicious prosecution under federal law, a plaintiff must show, at a minimum, that

there is no probable cause to justify an arrest or a prosecution." (internal quotation marks &

citation omitted)). In this case, Plaintiff's malicious prosecution claim is premature because

the criminal charges are still pending.

Finally, a federal court cannot order a state court to transfer a pending criminal case

to another state court. Federal injunctions against state criminal proceedings may be issued

only "under extraordinary circumstances where the danger of irreparable loss is both great

and immediate." Younger v. Harris, 401 U.S. 37, 44 (1971) (internal quotation marks &

citation omitted). The Supreme Court emphasized that

> [c]ertain types of injury, in particular, the cost, anxiety, and inconvenience of
> having to defend against a single criminal prosecution, could not by
> themselves be considered "irreparable" in the special legal sense of that term.
> Instead, the threat to the plaintiff's federally protected rights must be one that
> cannot be eliminated by his defense against a single criminal prosecution.

Id. at 46.

"Three factors determine whether a federal court should abstain from interfering in

a state court action: (1) whether the underlying proceedings constitute an ongoing judicial

proceeding, (2) whether the proceedings implicate an important state interest, and (3)

whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge." Fieger v. Cox, 524 F.3d 770, 775 (6th Cir. 2008) (citation omitted).  In this case, there apparently is an ongoing criminal proceeding, and the State has an important interest in enforcing its criminal laws.  Plaintiff can file motions in state court seeking a change of venue and otherwise objecting to any violations of his constitutional rights.  If those motions are not successful in the trial court and he is convicted, the state appellate courts can review any constitutional claims.  Under these circumstances, it is not appropriate for a federal court to intervene in this ongoing state criminal case.

The Sixth Circuit recently held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA.  LaFountain v. Harry, 716 F.3d 944, 951 (6th Cir. 2013); *see also* Brown v. R.I., No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded.").  Leave to amend is not required where a deficiency cannot be cured. Brown, 2013 WL 646489, at *1; Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed.  If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."); Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); Curley v.

12

Perry, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").

The deficiencies in Plaintiff's complaint cannot be cured by amendment for the reasons previously stated. Therefore, the Court DISMISSES the action for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). The dismissal of the malicious prosecution claim is without prejudice to its timely refiling if the favorable termination requirement is satisfied.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. Id. It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See* Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee[4] if Plaintiff nevertheless appeals the dismissal of this case.  A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b).  *See* McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds*, LaFountain v. Harry, 716 F.3d at 951.  McGore sets out specific procedures for implementing the Prison Litigation Reform Act, 28 U.S.C. § 1915(a)-(b).  Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim.  This "strike" shall take effect when judgment is entered.  Coleman v. Tollefson, 733 F.3d 175, 177-78 (6th Cir. 2013).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

   s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[4] Effective December 1, 2013, the appellate filing fee increased to $500.  The district court also charges a $5 fee for filing the notice of appeal, pursuant to 28 U.S.C. § 1917.

14